**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| VOLT, LLC, a<br>Florida limited liability company,<br><br>　　　　　　Plaintiff,<br>　　v.<br>VOLT LIGHTING GROUP LLC,<br>an Oregon limited liability company, and<br>BRENT NEWMAN, an Oregon resident<br><br>　　　　　　Defendants. | Case No. 8:18-cv-01409-EAK-CPT |

**PLAINTIFF VOLT, LLC'S CORRECTED[1] MEMORANDUM IN OPPOSITION TO
DEFENDANTS VOLT LIGHTING GROUP, LLC AND BRENT NEWMAN'S
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

Plaintiff Volt, LLC, hereby opposes Defendants Volt Lighting Group, LLC ("Volt Lighting") and Brent Newman's ("Newman") Motion to Dismiss for Lack of Personal Jurisdiction [Dkt. 11] ("Motion"), and states as follows:

**I.   INTRODUCTION**

In their Motion, Defendants contest both general and specific jurisdiction in Florida. Plaintiff agrees with Defendants, based upon current information, that general jurisdiction is not applicable. However, specific jurisdiction in this trademark infringement matter is clearly available in Florida under Eleventh Circuit precedent, given the unrefuted intentional nature of the Defendants' tortious actions in (1) adopting an infringing trademark with

---

[1] Modified from the original Opposition filed at Dkt. 17 only to replace a paragraph that was inadvertently duplicated at page 13 (PageID 230) with a different paragraph at page 13, *infra*.

1

knowledge of Plaintiff's mark, (2) causing regular and continuous actual confusion, (3) refusing to effectively rebrand/intentionally associating their new brand with Plaintiff's well-known brand, (4) disparaging Defendants marks in the process; and then (5) supplying infringing content to third-party websites to make infringing products available directly to consumers, including Florida consumers, at great injury to Plaintiff, a Florida business. Defendants have made clear their intent to continue to cause harm in Florida to both Plaintiff and Florida consumers if not stopped by this Honorable Court.

## II. FACTS PERTINENT TO SPECIFIC JURISDICTION

Plaintiff adopted the Volt trademark in 2008, and promoted it heavily on its commercial website, included it on the packaging of its well-received lighting products, and within the lighting industry at trade shows and in various widely-circulated advertisements. (Brynjolfsson Decl. at ¶4). Through these efforts and at great expense, Plaintiff's Volt-branded website became the highest ranked search engine result for landscape lighting and outdoor lighting by 2010. Id. ¶4. Defendant Newman first used Volt in a trademark two years after Plaintiff, when he opened a small brick and mortar lighting store in Oregon in 2010 (Newman Decl. ¶5). This was after Plaintiff's Volt brand was already well-known in the lighting industry. (Brynjolfsson Decl. at ¶4). Newman, however, did not actually use "Volt Lighting" as the store name, as he incorrectly states in Paragraph 5. Rather, as shown by publicly available information, he used "Volt" alone as the sign on the front of his store and on his webpage. (*See* Matulis Decl. ¶¶4-5 & Exhs. B & C). Even though he had formed a corporate entity named Volt Lighting, and acquired a matching website address at

2

www.voltlighting.net, when it came to selecting the trademark for his store, Mr. Newman adopted Plaintiff's exact mark – Volt.  Id.

Notably, Newman does not state in Paragraph 5, or anywhere else in his declaration, that he was unaware of Plaintiff's Volt *brand or trademark* in 2010 -- only that he was unaware of the Plaintiff's legal entity, Volt, LLC, and the www.landscapelightingworld.com website.  (*See, e.g.*, Newman ¶¶5, 10-13, at Dkt. 11-1).  From 2010 to 2013, Newman sold lighting fixtures, *as well as outdoor lighting,* in his Volt-branded physical store (par 6). (Matulis Decl. ¶3 & Exh. A)(attaching 2010 customer review commenting on Volt's "exterior lighting products").   Again in paragraph 14 of his Declaration, Newman does not deny that he knew of the confusingly similar Volt trademark, but instead states only: "At the time I selected www.voltlighting.net as a domain, I did not identify anyone using Volt Lighting."  A review of Mr. Newman's Corrected Declaration filed in the initial lawsuit against Defendant Volt Lighting Group highlights that, rather than denying that he had ever heard of Plaintiff or its brand, he is only able to deny that he was aware of Plaintiff's corporate form, i.e., "Plaintiff Volt, LLC."  (Matulis Decl. ¶11 & Exh. I at ¶¶5, 9-11, 15). Mr. Newman's carefully worded Declaration fails to deny the key element of his claimed defense – Defendants' absence of knowledge of Plaintiff's marks or products sold under it when he adopted and continued using his confusingly similar Volt Lighting Group mark.

Newman closed his brick and mortar stores in 2012 and 2013 (Newman ¶7).  He states that he transitioned his business name from Volt Lighting to Volt Lighting Group during this time, but publicly available information shows that he did not create a Volt Lighting Group business or use Volt Lighting Group as a trademark; rather, he merely used a

3

web address of www.voltlightinggroup.com to host a landing page called Volt Lighting Group, not as a brand for any products or services, but as a landing page to host links to three potential future brands or lighting businesses – LEDdistributing, Artisan fixtures, and Exhibit LED – with each brand designated with a "TM" on the landing page.  (*Compare* Newman Decl. at ¶7 *with* Matulis Decl. at ¶6 & Exh. D)

During this same 2012-2013 timeframe, Plaintiff had acquired trademark rights and recognition in "Volt Lighting" as well as "Volt," and started using www.voltlighting.com as a web address for its "Volt" branded website, along with continuing to use www.landscapelightingworld.com.  (Brynjolfsson ¶4).   In other words, a consumer could now reach Plaintiff's website through two different domains, by typing in either www.landscapelighting.com or www.voltlighting.com.  (Brynjolfsson ¶4).  Newman's misleading attempts to argue that www.voltlighting.com would show a redirect message (Newman ¶15 & Exh. C) or would land on an unbranded website (Newman ¶15 & Exh. D) have been completely refuted by Alan Brynjolffson's Declaration and should carry no weight in the Court's analysis.  Brynjolfsson ¶5-8).   The unrefuted facts show that Plaintiff had a top-ranked website accessible by typing in www.voltlighting.com in 2013, well before the Defendants started their Volt Lighting Group business in 2014, and even by the time Newman started using www.voltlightinggroup.com as a mere landing page.

As to the facts concerning Defendants' alleged "rebranding," rather than rebrand and inform the confused public that they were changing their name from Volt Lighting Group to Kelvix, Defendants redirected all traffic at their www.voltlightinggroup.com web address to a new website with a "pop up" message that announced Kelvix as "a new chapter for Volt

Lighting Group. (Matulis ¶10 & Exh H). Further, they utilized Plaintiff's yellow-gold brand color in the announcement, or a shade very similar to it, and invited all consumers, including all of Plaintiff's confused customers, to bookmark the site. Id. Despite demand, Defendants' refused to change the announcement to "Kelvix, formerly Volt Lighting Group" or similar words that would designate the change as a rebrand, or to modify their colors to be less like the colors in Plaintiff's brand. (Matulis ¶12). At the same time, Defendants denigrated Plaintiff's Volt trademark on its website, further targeting Plaintiff and falsely stating their reasons for adopting Kelvix. Specifically, Defendants' published on their new website an "About Us" page that included the following:

> Much has changed over the past fourteen years, including Volt Lighting Group. The common word Volt has become extremely saturated online as it is used tens of millions of times. We felt our name no longer represented the progressive company we have become within a very crowded space. Inspired by our vast matrix of Kelvin offerings, Kelvix is a short, relevant, and unique name that we can grow with, and that customers can easily find and access.

(Matulis ¶8 & Exh. F). None of these facts, all of which were pled in the Complaint and provide a jurisdictional basis founded on intentional tort, as established below, are denied by Newman. Rather, he only provides conclusory denials, such as "At no point during the rebranding did I or Kelvix have any intent to harm Plaintiff or to otherwise infringe any of Plaintiff's purported trademark rights." (Newman Decl. ¶18; *see also* ¶¶18-19, 55-56). Nor does Newman deny that there have been numerous instances of actual confusion among customers – both before and after Defendants' "rebranding" – or that he is, and was, aware of this confusion.

Why would a company that claims to only want to sell through agents, and not a website, (Newman ¶¶39-46) risk such brash infringing behavior in the midst of a lawsuit-

compelled rebranding process? The answer may lie in the fact that in connection with the launch of Kelvix, Defendants have begun supplying infringing content to third-party, "direct to the customer" websites, which sell these products branded as "Volt Lighting Group – Kelvix", (another co-brand rather than rebrand) and thus make their products available directly to customers over the internet. (Matulis Decl. ¶9 & Exh. G). In December, 2017, Defendants also filed an application to register Kelvix as a trademark for use in conjunction with "light fixtures, lighting systems, and electrical power supplies" in International Class 011, and "custom lighting design services" in International Class 042. (Matulis ¶7 & Exh E). Notably, Kelvix did not seek a registration of Kelvix for use with only "custom-made linear LED lighting systems," or even LED strip lighting and LED fixtures generally, which they assert is all they sell. (Newman ¶37). Nor did Kelvix limit its application to the "business-to-business" channel of trade. Id. These broad categories would encompass most of Plaintiff's products and services. This is important, as Newman testified in his Declaration that other than "rebranding" and changing its formal name to Kelvix, LLC, Defendants' "business has not otherwise changed." (Newman ¶3.).

Plaintiff has continued to experience confusion and mistaken association with Defendants (Brynjolfsson Decl. at ¶9-14) despite – or possibly because of – Defendants' claimed "rebranding".

### III. APPLICABLE LEGAL STANDARDS

Though a Defendant challenging jurisdiction may refute the prima facie allegations of the Complaint with evidence and shift the burden to the Plaintiff to come forward with evidence of its own, not every declaration submitted by a defendant will automatically shift

the burden back to the plaintiff. As the Eleventh Circuit has explained, "[t]o shift the burden back to the plaintiff, a defendant's affidavit must contain 'specific factual declarations within the affiant's personal knowledge.'" *Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1351 (2013) (citations omitted). Conclusory denials or narrowly worded denials that do not respond to the numerous specific allegations of the Complaint may not shift the burden back to the Plaintiff at all. *Id.* Further, any conflicts in evidence are to be construed in favor of plaintiff, where it is reasonable to do so. *See*, *e.g.* *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010).

Personal jurisdiction is a two-part question in the Eleventh Circuit. First, the Court must find that personal jurisdiction exists under the state's long-arm statute, applying state law. Second, the Court must analyze whether the due process requirements of the federal constitution are satisfied. *Id.*

### a. LONG-ARM STATUTE

The Florida "long-arm" statue permits the exercise of jurisdiction over nonresident defendants who commit a tortious act within Florida. Fla. Stat. §48.193(1)(b). A federal court may exercise this long-arm jurisdiction to the extent it is consistent with federal due process. *Licciardello v. Lovelady,* 544 F.3d 1280, 1283 (11th Cir. 2008). The Eleventh Circuit has adopted the broad interpretation of the Florida courts that allows personal jurisdiction over a nonresident defendant who commits a tort outside of Florida that causes injury in Florida. *Id. citing Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1216 (11th Cir. 1999). Therefore, regardless of where the actions creating infringement took place, jurisdiction is proper if injury is caused in Florida. In cases involving intentional trademark infringement

of a Florida party's trademark rights, Florida courts have found injury in Florida if the website is accessible in Florida, and therefore the Eleventh has done so as well. *Id*. 1283-84.

### b. DUE PROCESS

Due process requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Eleventh Circuit uses a three-part test to decide whether the minimum contacts requirement is met: "(1) the contacts must be related to the plaintiff's cause of action; (2) the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and (3) the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there." *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993) (citation omitted). In the alternative, the Court may apply the *Calder* "effects" test to determine if due process is met. *Calder v. Jones*, 465 U.S. 783 (1984). "Under the "effects" test, to qualify as a sufficient basis for jurisdiction, the tort must have been '(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state.'" *DCS Real Estate Invs. LLC v. Bella Collina Events LLC*, 2015 WL 628586, at *3 (M.D. Fla. Feb. 12, 2015) (citations omitted). Under this standard, jurisdiction may be exerted over a non-resident defendant who has engaged in purposeful conduct creating a "substantial connection" with the forum state, even if the conduct is limited to a single act. *Licciardello v. Lovelady*, 544 F.3d at 1285. "Intentional torts are such

acts, and may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." *Id.*

In a case involving trademark infringement over a website, the infringing use of a mark on a website accessible in Florida is sufficient to establish that the claim is related to defendant's contact with Florida. *Lovelady,* 544 F.3d at 1284-85 n.4. In a case involving defamation or trade libel, "allegedly defamatory material about a Florida resident placed on the Web and accessible in Florida constitutes an "electronic communication into Florida" when the material is accessed (or "published") in Florida." *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1206 (Fla. 2010). Applying *Calder v. Jones*, 465 U.S. 783 (1984), courts assessing allegations of trademark infringement have "consistently found the minimum contacts inquiry satisfied because trademark infringement is an intentional tort directed toward the state in which the plaintiff is domiciled." *R & R Games, Inc. v. Fundex Games, Ltd.*, 8:12-CV-01957-T-27, 2013 WL 784397, at *4 (M.D. Fla. Mar. 1, 2013)(citing cases).

In *Licciardello v. Lovelady,* 544 F.3d 1280, 1283 (11th Cir. 2008)*,* the plaintiff sued a Tennessee resident for trademark infringement in the Middle District of Florida, alleging the defendant posted the plaintiff's trademarked name and picture on a website accessible in Florida. *Id.* at 1282. Noting that the defendant's conduct was intentional and calculated to cause harm in Florida, the Eleventh Circuit held that the defendant had sufficient contacts with Florida under *Calder. Id.* at 1287–88. "District courts in the Middle District have followed this rationale." *R & R Games*, 2013 WL 784397, at *4 (citing cases).

Finally, to determine if exercising jurisdiction over a defendant does not offend notions of fair play and substantial justice, courts consider of the following factors: (1) the

burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the interstate judicial system's interest in resolving the dispute. *Burger King Corp. v. Rudzwicz*, 471 U.S. 462, 477-78 (1985).

### c. THE CORPORATE SHIELD DOCTRINE DOES NOT APPLY TO INTENTIONAL TORTS

Further, in Florida, a defendant's actions as a corporate officer *can* provide a basis for personal jurisdiction over the individual in cases of intentional tort. *Doe v. Thompson*, 620 So. 2d 1004 n.1)(stating exception to corporate shield doctrine in cases of fraud and intentional misconduct). In the *Louis Vuitton* case, the Eleventh Circuit unequivocally held that trademark infringement was an intentional tort to which the corporate shield doctrine did not apply. *See Louis Vuitton*, 736 F.3d at 1354-55. Thus, Defendant Newman's corporate shield defense to person jurisdiction fails.

### IV. ARGUMENT

#### a. BINDING LEGAL PRECEDENT ESTABLISHES THE BOTH VOLT LIGHTING GROUP AND NEWMAN ARE SUBJECT TO THIS COURT'S JURISDICTION

Given the egregious facts established and unrefuted above, and the legal standards for specific jurisdiction in the Eleventh Circuit for satisfying the Florida long-arm statute as well as Due Process in cases analogous to the case at bar - intentional trademark infringement through website cases - specific jurisdiction is warranted as to all Defendants in Florida. Specifically, Defendants have persisted in knowingly and purposefully infringing Plaintiff's trademark rights, in the face of ongoing and regular actual confusion, even after being sued. Defendants cannot and have not denied confusion or infringement. They have not and cannot

deny that they have utilized Plaintiff's brand colors in the launch of Kelvix. They cannot and have not denied that they have refused to clearly state on their website and third-party sites that Volt Lighting Group changed its name to Kelvix. They cannot and have not denied that confusion is ongoing since they launched Kelvix. They cannot and have not denied that they falsely stated on the new Kelvix website, as the reason for launching Kelvix, that Volt had lost its value as a distinctive mark, as alleged at paragraph 52 of the Complaint. They cannot and have not denied that they are supplying infringing content to third party websites, as alleged in paragraph 54 of the Complaint and demonstrated by the CESCO website screenshot attached as Exhibit G to the Matulis Declaration.

Rather, the Newman Declaration only presents conclusory denials of no intent, and such denials that do not respond to the numerous specific allegations of the Complaint do not shift the burden of proof back to the Plaintiff or refute the jurisdictional allegations. *Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1351 (2013) (citations omitted). Further, Mr. Newman's denials as to knowledge of Plaintiff prior to 2016, even if plausible, cannot negate the ongoing tortious and intentional behavior from 2016 – 2018.

Defendants contend that since customers cannot order directly from their website, there is no jurisdiction over them. In *Licciardello,* the defendant also did not provide for goods or services to be purchased directly through the website. Like our case, the website in *Licciardello* misappropriated the name and reputation of the Plaintiff for commercial gain, and this is enough. Further, since Defendants have provided infringing content to third party web sites that do sell directly to customers, and have not refuted or attempted to refute this allegation, this argument fails factually as well as legally.

For the due process inquiry, "fair warning" is satisfied if the defendant has "purposefully directed" activities at residents of the forum, and the litigation arises from alleged injuries that relate to those activities. *Keeton v. Hustler Magazine, Inc*., 465 S.Ct. 770, 774 (1984). In cases such as the case at bar, where the Defendants have limited connections to the state, all that is required for specific jurisdiction is purposefully established 'minimum contacts'. *Id*. In addition to the infringing activities purposely directed at Plaintiff for gain, Defendants have had continuous sales into Florida from 2014 to the present. These sales are not *de minimis*, and some of them were made when a Florida sales agent contacted them, presumably finding them through their website. *See* Newman Decl. at ¶51, 53. This establishes that they have almost certainly generated sales into Florida through their website. At the very least, discovery should be conducted to evaluate such a claim if the Court deems it necessary for jurisdiction.

However, this Court can dispense with the jurisdictional question without discovery, because in a case involving trademark infringement over a website, the infringing use of a mark on a website accessible in Florida is sufficient to establish that the claim is related to defendant's contact with Florida. *Lovelady,* 544 F.3d at 1284-85 n.4. In a case involving defamation or trade libel, "allegedly defamatory material about a Florida resident placed on the Web and accessible in Florida constitutes an "electronic communication into Florida" when the material is accessed (or "published") in Florida." *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1206 (Fla. 2010). In *Calder*, the Supreme Court set forth the "effects test" for Due Process, under which "the fact that the actions causing the effects in [the forum state] were performed outside the State did not prevent the State from asserting jurisdiction over the cause of

12

action arising out of those effects." 465 U.S. at 787.  Thus, under *Calder*, intentional torts can support jurisdiction over a nonresident who has no other contacts with the forum. "Applying *Calder,* courts assessing allegations of trademark infringement have consistently found the minimum contacts inquiry satisfied because trademark infringement is an intentional tort directed toward the state in which the plaintiff is domiciled." *R & R Games, Inc. v. Fundex Games, Ltd.*, 8:12-CV-01957-T-27, 2013 WL 784397, at *4 (M.D. Fla. Mar. 1, 2013)(citing cases).

As to fair play and substantial justice, the Eleventh Circuit instructs that a Florida plaintiff, such as Volt, LLC, injured by the intentional torts of nonresident Defendants should not be required to go to the Defendants' state for redress.  *Licciardello,* 544 F.3d at 1288 (*citing* U.S. Supreme Court in *Calder*).  Further, "Florida has a *very strong* interest in providing relief to Florida parties injured by the intentional misconduct of nonresidents. *Id.* (emphasis added.)  Defendants market and sell products all over the United States, including Florida.  (*See* Newman Exhs. J & K, reflecting numerous product sales throughout the United States, including to companies located in Florida).  Defendant Newman's attempt to characterize these sales as "coincidental" in paragraph 54 of his declaration is not meaningful in this analysis.  It is not overly burdensome for Defendants that have such an extensive national business, given the convenience of modern air travel and electronic communications, to be haled into another state to answer for intentional misconduct.  It is reasonable, well within Florida and Eleventh Circuit specific jurisdiction law, Constitutional, and perhaps most importantly, it is just.

### b. THE CASES CITED BY DEFENDANTS ARE EITHER NOT BINDING, DISTINGUISHABLE, OR MISCHARACTERIZED IN THE MOTION

Defendants have cited no binding legal precedent factually analogous to the case at bar to refute jurisdiction. *See, e.g., Bristol-Myers Squibb Co. v. Superior Court of CA*, 137 S. Ct. 1773, 1779-80 (2017)(a product liability case where jurisdiction was denied because none of the injured plaintiffs were residents of the forum); *Hinkle v. Continental Motors, Inc.*, 268 F. Supp. 3d 1312, 1322-23 (M.D. Fla. 2017)(products liability case wherein the court found no injury in Florida because the crash took place in another forum); *Organic Mattresses, Inc. v. Envtl. Res. Outlet, Inc.*, 2017 WL 5665354 (S.D. Fla. Oct. 6, 2017)(inapplicable trademark case where jurisdiction was denied because infringing material did not appear on the defendants' main website, but rather on a blog site which contained 300 articles and the infringing matter only appeared in the title of one of the articles, and on another newly launched site that had very little content and very few visitors).

Defendants have also argued that they have not purposely availed themselves of the benefits of Florida under *BTG Patent Holdings, LLC v. Bag2Go GmbH*, 193 F. Supp. 3d 1310, 1318 (S.D. Fl 2016), indicating the case states that sales into Florida through national agents is insufficient for jurisdiction under § 48.193(1)(a)(2).  The *BTG* court made no such statement or holding. Rather, the *BTG* court found jurisdiction lacking because the *BTG* Plaintiffs were Nevada entities, therefore, the injury from trademark injury would be in Nevada, not Florida.  Further, the defendants in *BTG* did not operate an infringing website accessible in Florida.

WHEREFORE, Plaintiff VOLT respectfully requests that this Honorable Court deny Defendants Volt Lighting Group, LLC and Brent Newman's Motion to Dismiss for Lack of

Personal Jurisdiction, or, in the alternative, withhold adjudication on the Motion and allow Plaintiff to undertake limited discovery on the issue of Defendants' contacts with the forum and knowledge of Plaintiff's Mark, and supplement this response.

Dated: August 13, 2018

>Respectfully submitted,
>*/s – James Matulis/*
>James M. Matulis
>Florida Bar No. 0077429
>Law Office of James Matulis
>9806 Gretna Green Drive, Suite 100
>Tampa, FL 33626
>Jim@MatulisLaw.com
>Tel. (813) 451-7347

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of August, 2018, the foregoing was electronically filed with the Clerk of Court through the CM/ECF system that will give notice to all parties of record.

>*/s/James Matulis*
>James Matulis, Esq