UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VOLT, LLC,

    Plaintiff,

v.                                                                CASE NO. 8:18-cv-1409-T-23CPT

VOLT LIGHTING GROUP LLC, et al.,

    Defendants.
_____/

**ORDER**

       In a trademark infringement action, an Oregon-based, commercial-lighting manufacturer (1) who manufactures no lighting in Florida, (2) who maintains no office or employees in Florida, (3) who is not registered to conduct business in Florida, and (4) who does not sell directly to a customer in Florida, but (5) who maintains an allegedly infringing website (a) that is entirely passive, (b) that neither targets nor mentions Florida, and (c) that offers neither in Florida nor anywhere else a mechanism by which to consummate a sale  has not — by merely maintaining the website — submitted to long-arm jurisdiction in Florida under Section 48.193(1)(a)(2), Florida Statutes. The Supreme Court of Florida has never claimed this unprecedented reach of Section 48.193(1)(a)(2), and the Supreme Court of the United States applies the Due Process Clause of the Fourteenth Amendment to forbid this unprecedented reach.

## BACKGROUND

Volt sues (Doc. 1) Volt Lighting Group (VLG) for trademark infringement. Volt alleges that VLG infringed Volt's trademark by operating a website under the domain www.voltlightinggroup.com, which Volt contends was confusingly similar to Volt's domain, www.voltlighting.com. Volt is a citizen of Florida. (Doc. 1 at ¶ 1) VLG, which currently operates as Kelvix, LLC, is a citizen of Oregon. (Doc. 1 at ¶ 2) VLG moves to dismiss Volt's complaint for a lack of personal jurisdiction in Florida. (Doc. 11) The parties agree that general jurisdiction does not exist but dispute the existence of specific jurisdiction. (Doc. 11 at 14–15; Doc. 23 at 1)

Formed by Alan Brynjolfsson in 2008, Volt is a limited liability company headquartered and registered in Florida. (Doc. 1 at ¶¶ 11–12) Volt specializes in outdoor and "landscape lighting." (Doc. 1 at ¶ 13; Doc. 18 at ¶ 8) In 2008, Volt purchased the www.voltlighting.com domain but sold lights from www.landscapelightingworld.com, which prominently displayed "VOLT." (Doc. 1 at ¶ 12) And although Volt did not acquire the "VOLT" trademark until 2014, Volt since 2009 has used "VOLT" in trade-show advertising, in trade magazines, and on the internet. (Doc. 1 at ¶¶ 13, 18) Additionally, the products sold from landscapelightingworld.com, as well as those products' packaging, bore the word "VOLT." (Doc. 1 at ¶ 12) In late 2012 or early 2013, Volt began redirecting internet traffic from landscapelightingworld.com to voltlighting.com. (Doc. 1 at ¶¶ 3–4, 16)

In May 2010, Brent Newman "registered" "Volt Lighting" with the Oregon Secretary of State. (Doc. 11-1 at ¶ 5) At the time, Newman's business consisted of a small "brick-and-mortar" store in Bend, Oregon. (Doc. 11-1 at ¶ 6) The store did not sell "landscape lighting." (Doc. 11-1 at ¶¶ 6, 13) Newman promoted the store through www.voltlighting.net. (Doc. 11-1 at ¶ 5) But in 2011 and 2012, Newman purchased the www.voltlightinggroup.com domain and "transitioned the business name from Volt Lighting to Volt Lighting Group." (Doc. 11-1 at ¶¶ 4, 7) As part of the business's transition, Newman began selling customized LED lighting, closed the store, and ceased using voltlighting.net. (Doc. 11-1 at ¶¶ 4–7, 37, 44) In April 2014, Newman's two business partners registered Volt Lighting Group as a limited liability company in Oregon[1] and adopted the voltlightinggroup.com domain. (Doc. 1 at ¶¶ 23, 26; Doc. 11-1 at ¶ 8) However, VLG did not sell either through the voltlightinggroup.com website or by telephone.[2] (Doc. 11-1 at ¶ 40) Nor did voltlightinggroup.com display prices. (Doc. 11-1 at ¶ 40) VLG maintains sixteen employees, all of whom work in Oregon; VLG manufactures only in Oregon; and VLG's headquarters are in Oregon. (Doc. 11 at 6) VLG is not registered to conduct business in Florida, keeps no office in Florida, and participates in no trade shows in Florida. (Doc. 11 at 6)

---

[1] Newman joined VLG as a member the following year. (Doc. 11-1 at ¶ 9)

[2] VLG worked, and continues to work, with "commercial lighting agents" who are familiar with VLG's products and who sell those products to "large commercial projects." (Doc. 11-1 at ¶¶ 42–46, 48–50)

In sum, beginning in either 2012 or 2013 and continuing through June 2018, Volt used voltlighting.com and VLG used voltlightinggroup.com. Volt alleges that the similarity between the domain names caused consumer confusion and that VLG's using voltlightinggroup.com infringed Volt's trademark. (Doc. 1 at ¶ 6) Newman claims not to have known about Volt's website or business through 2013. (Doc. 11-1 at ¶¶ 5, 10–14) Although he admits learning about Volt in 2015, Newman received no complaint from Volt about infringement. (Doc. 11-1 at ¶ 16)

## DISCUSSION

Florida's exercise of personal jurisdiction over a non-resident such as VLG must accord with Florida's long-arm statute and with the Due Process Clause of the Fourteenth Amendment. *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989). Under Section 48.193(1)(a)(2), Florida Statutes, a non-resident submits to personal jurisdiction in Florida by "[c]ommitting a tortious act within [Florida]." Trademark infringement is a tortious act under the long-arm statute. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013). "Because the reach of the Florida long-arm statute is a question of Florida state law, federal courts are required to construe [the long-arm statute] as would the Florida Supreme Court." *Oriental Imps. & Exps., Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890–91 (11th Cir. 1983).

Although Section 48.193(1)(a)(2) creates personal jurisdiction for a non-resident's "tortious act within Florida," physical presence "within Florida" is

- 4 -

unnecessary. A non-resident can submit to Florida's jurisdiction by transmitting "into Florida" an electronic communication that results in a tort. *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002). However, under *Internet Solutions Corp. v. Marshall*, 39 So.3d 1201, 1214–15 (Fla. 2010), which must govern the result in this instance, a non-resident's website, although accessible in Florida, results in no tort "committ[ed] within [Florida]" and fails to subject a non-resident to Florida's jurisdiction, unless a person in Florida views the website. For example, a non-resident who posts a defamatory statement on a website that is accessible in Florida submits to Florida's jurisdiction only if a person in Florida views the website. Accordingly, a non-resident who uses a website to infringe a trademark submits to Florida's jurisdiction if the website bearing the infringing mark is not only accessible in Florida but is viewed in Florida. *Jackson-Bear Group, Inc. v. Amirjazil*, No. 2:10-cv-332-FtM-29SPC, 2011 WL 1232985, at *5–6 (M.D. Fla. Mar. 30, 2011) (Steele, J.) (applying *Internet Solutions* to a trademark infringement action and determining that the plaintiff failed to show that a person in Florida viewed the allegedly infringing website).[3]

---

[3] *See also The Wigglebutt Inn, Inc. v. Plan B Solutions, LLC*, No. 2:11-cv-686-Ftm-99DNF, 2012 WL 13098423, at *2 (M.D. Fla. Sept. 27, 2012) (Conway, J.) (adopting the magistrate judge's report and recommendation and concluding that "the Florida Supreme Court [in *Internet Solutions*] set forth a new standard for determining personal jurisdiction that examines whether a website is actually accessed, rather than merely accessible by a Florida resident"); *Mercury Enterprises, Inc. v. Vesta Mgmt. Group*, No. 8:12-cv-417-T-30MAP, 2012 WL 2087439, at *2 (M.D. Fla. June 8, 2012) (Moody, J.) (finding Florida's long-arm statute "satsifie[d]" because the plaintiff alleged that a Florida resident accessed in Florida the defendant's allegedly infringing website); *Edwards v. Trade Publishing Ltd.*, No. 6:10-cv-1883-Orl-31KRS, 2011 WL 5416190, at *9 (M.D. Fla. July 20, 2011) (Spaulding, M.J.) (acknowledging that the "Florida Supreme Court recently clarified the reach of Florida's long-arm statute" in *Internet Solutions* and requiring a plaintiff suing for copyright infringement to show that a Florida resident accessed the defendant's website), *adopted by* 2011 WL 5459549 (M.D. Fla. Aug. 18, 2011) (Presnell, J.).

Because VLG challenges personal jurisdiction, Volt must establish Florida's jurisdiction over VLG by the pleadings and affidavits. *Cosmopolitan Health Spa, Inc. v. Health Servs., Inc.*, 362 So.2d 367, 368 (Fla. 4th DCA 1978). Although Brynjolfsson declares that Volt "employees have reported multiple instances of confused customers" (Doc. 24 at ¶ 9), the statement permits no inference that a customer in Florida viewed VLG's allegedly infringing website. Under *Internet Solutions*, Volt fails to establish that Florida's long-arm statute subjects VLG to Florida's jurisdiction.

Citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008), Volt argues that Florida's long-arm statute allows Florida to exercise personal jurisdiction over a non-resident who infringes a trademark by using a website that is accessible in Florida. But *Licciardello* pre-dates the Supreme Court of Florida's governing directive in *Internet Solutions*, which requires not only the website's accessibility in Florida but the website's viewing in Florida to subject a non-resident to Florida's jurisdiction under the long-arm statute. *Oriental Imps. & Exps., Inc.*, 701 F.2d at 890–91 (requiring a federal court in Florida to construe Florida's long-arm statute as the statute is understood by the Supreme Court of Florida).

But even if the long-arm statute encompasses VLG's alleged infringement, Florida's exercising personal jurisdiction over VLG violates the Fourteenth Amendment's Due Process Clause. *International Shoe Co. v. Washington* establishes the fundamental proposition that a non-resident must "have certain minimum

contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

> To constitute constitutionally sufficient minimum contacts, the defendant's contacts with the applicable forum must satisfy three criteria. First, the contacts must be related to the plaintiff's cause of action or have given rise to it. *Burger King v. Rudziewicz*, 471 U.S. 462, 472 (1985). Second, the contacts must involve "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . ., thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also Burger King*, 471 U.S. at 474–75. Third, the defendant's contacts with the forum must be "such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

*Vermeulen v. Renault U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993).

However, if a plaintiff alleges that a non-resident committed an intentional tort, that single act can suffice to establish the non-resident's minimum contacts with the forum in accord with the "effects test utilized in *Calder v. Jones*." *Oldfield v. Pueblo De Bahia, S.A.*, 558 F.3d 1210, 1220 n.28 (11th Cir. 2009) (quotations omitted). In *Calder*, a Florida tabloid reporter authored an allegedly libelous article about a California actress. To research the article, the reporter traveled to California and called sources in California. Also, the reporter knew that his employer circulated 600,000 copies of the tabloid in California. *Calder v. Jones*, 465 U.S. 783, 785–86 (1984). *Calder* instructs that a state can exercise personal jurisdiction over a non-resident if the non-resident commits an intentional tort "that was directly aimed at the [forum state] and caused an injury within the [forum state] that the defendant

reasonably should have anticipated." *Oldfield*, 558 F.3d at 1220 n.28 (citing *Calder*, 465 U.S. at 789–90).

*Walden v. Fiore* crystallizes *Calder*'s "effects test." 571 U.S. 277 (2014). The plaintiffs, Nevada citizens, were traveling by commercial airline from Puerto Rico to Nevada. During a layover at the airport in Atlanta, Georgia, the defendant, a Georgia police officer, searched the plaintiffs' luggage and seized $97,000 in cash. Alleging that the search lacked probable cause, the Nevada citizens sued the Georgia police officer in Nevada's federal court. *Walden*, 571 U.S. at 279–80.

*Walden* confirms that "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there" dictate whether the forum state's exercising personal jurisdiction accords with due process. "The plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State. . . ." *Walden*, 571 U.S. at 285.

Therefore, in *Calder*, California's exercising personal jurisdiction over the Florida reporter comported with due process not exclusively because the Florida reporter harmed a California resident but because the Florida reporter created "various contacts . . . with California." The Florida reporter:

> relied on phone calls to "California sources" for the information in their article; . . . wrote a story about the plaintiff's activities in California; . . . caused reputational injury in California by writing an allegedly libelous article that was circulated widely in the State; and the 'brunt' of that injury was suffered by the plaintiff in that State.

*Walden*, 571 U.S. at 287.

- 8 -

Conversely, in *Walden*, Nevada's exercising jurisdiction over the Georgia police officer would have "shift[ed] the analytical focus from [the defendant's] contacts with the forum to [the defendant's] contacts with the [the plaintiffs]." Writing for a unanimous Supreme Court, Justice Thomas warns that "[t]his approach to the 'minimum contacts' analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis . . . [and] improperly attributes a plaintiff's forum connections to the defendant and makes those connections decisive in the jurisdictional analysis." *Walden*, 571 U.S. at 289.

The "effects test" governs in this action because Volt alleges that VLG intentionally infringed Volt's trademark. (Doc. 1 at ¶¶ 28, 30, 32, 56, 60, 68, 90) But Volt fails to show that VLG "directly aimed" the allegedly infringing website at Florida. *Oldfield*, 558 F.3d at 1220 n.28; *see also Calder*, 465 U.S. at 789 ("[the plaintiffs'] intentional, and allegedly tortious, actions were expressly aimed at [the forum state]"). VLG's purported connection to Florida resembles the Georgia police officer's non-existent connection to Nevada in *Walden*. That is, the defendant's connection in each circumstance extends not to the forum but to the plaintiff, who is a citizen of the forum. Volt presents nothing that shows VLG's website was viewed by, and confused, a Florida consumer or even targeted a Florida consumer. Additionally, nothing suggests that VLG's limited sales to Florida resulted from the allegedly infringing website, which included no mechanism to effect a purchase. Volt

fails to satisfy *Calder* and *Walden*'s command that VLG must have intentionally created a connection with Florida.

Nor does a defendant "target" a state and establish "minimum contacts" solely by creating a website that a consumer in the state might access. "The mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction." *Fraser v. Smith*, 594 F.3d 842, 874 (11th Cir. 2010) (quoting *McBee v. Delica Co.*, 417 F.3d 107, 124 (1st Cir. 2005)); *Pebble Beach v. Caddy*, 453 F.3d 1151, 1156–58 (9th Cir. 2009) (holding that a British bed-and-breakfast's "passive website"[4]

---

[4] A "passive website" is a website that "does little more than make information available to those who are interested." *Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1229–30 (M.D. Fla. 2000) (Presnell, J.) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (McLaughlin, J.)). *Zippo* proposes a "sliding scale" to determine whether a website can subject the website's operator to personal jurisdiction outside the operator's home state. At one end of the scale, a "passive website" fails to support a state's exercising personal jurisdiction. At the opposite end, a website through which a defendant conducts business will tend to support a state's exercising personal jurisdiction. For a website in the "middle ground," whether the website supports a state's exercising personal jurisdiction depends on the website's "level of interactivity and [the] commercial nature of the exchange of information that occurs on the [website]." *Zippo Mfg. Co.*, 952 F. Supp. 2d at 1124. The Eleventh Circuit has acknowledged *Zippo* but has neither adopted nor rejected *Zippo*'s "sliding scale." *Louis Vuitton*, 736 F.3d at 1355 n.10; Oldfield, 558 F.3d at 1219 n.26. However, several federal circuit courts and several federal district courts in Florida have adopted *Zippo*'s sliding scale to consider whether exercising personal jurisdiction accords with due process. *Phazzer Elecs. Inc. v. Protective Sols., Inc.*, No. 6:15-cv-348-Orl-31DAB, 2016 WL 3543638, at *5 n.9 (M.D. Fla. June 29, 2016) (Presnell, J.) ("While *Zippo* test is not binding in this jurisdiction, it is a factor this Court may take into account"); *Pathman v. Grey Flannel Auctions, Inc.*, 741 F. Supp. 2d 1318, 1325 (S.D. Fla. 2010) (King, J.) ("The court views internet activity within the sliding scale provided by *Zippo*, as an aspect of purposeful availment, but not as definitive in and of itself"); *Foreign Imported Prods. & Publ'g,*, *Inc. v. Grupo Industrial Hotelero, S.A.*, No. 07-22066-CIV, 2008 WL 4724495, *7–9 (S.D. Fla. Oct. 24, 2008) (Gold, J.) (recording *Zippo*'s adoption by federal circuit courts and Florida's district courts of appeal and using *Zippo*'s sliding scale to determine whether the defendant's website supported Florida's exercising personal jurisdiction); *Knights Armament Co v. Optical Sys. Tech.*, *Inc.*, No. 6:07-cv-1323-Orl-22KRS, 2008 WL 2157108, at *7 (M.D. Fla. May 21, 2008) (Conway, J.) (citing *Zippo* and concluding "[t]hat [the defendant's] website may be viewed in every state is not a sufficient contact with Florida to support specific . . . jurisdiction").

that allegedly infringed a California resort's trademark was insufficient "without more" to create jurisdiction in California); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549–50 (7th Cir. 2009) (concluding that personal jurisdiction cannot "be premised on the maintenance of . . . a 'passive' website . . . which merely makes available information about a company and its products"). VLG's allegedly infringing website appears not to have mentioned Florida and not to have included a mechanism to allow a customer in Florida to buy a VLG product, either of which might suggest that VLG targeted Florida through the website. *Smarter Every Day, LLC v. Nunez*, No. 2:15-cv–1358-RDP, 2017 WL 1247500, at *4 (M.D. Ala. Apr. 5, 2017) (Proctor, J.) (citing *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 60 (1st Cir. 2016)).

Volt's reliance on *Licciardello* is again unavailing. *Licciardello* is expressly limited to the facts in that case and "do[es] not . . . establish any general rule for personal jurisdiction in the internet context." 544 F.3d at 1288 n.8. In *Licciardello*, a nationally renown musician from Florida alleged that his former manager, a citizen of Tennessee, impermissibly used the musician's trademarked name and likeness on the manager's website. The Tennessee manager had managed and attended the musician's shows in Florida, and the allegedly infringing website directly sold (according to the circuit court's opinion) in Florida the manager's products and services. 544 F.3d at 1282. By contrast, VLG lacked a business relationship with Volt, possessed only limited knowledge of Volt, sent no employee to Florida for

business, and did not sell to Florida (or anywhere else) through the allegedly infringing website. *Licciardello*, even if correctly decided and even if still in force, does not control the jurisdictional issue in this action.

Finally, the "fair play and substantial justice" inquiry considers the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the states in furthering substantive social policies." *World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286, 292 (1980). The burden on the defendant is "always a primary concern." *World-Wide Volkswagen*, 444 U.S. at 292. VLG, an Oregon company, would face a substantial burden if forced to litigate in Florida. But because VLG lacks minimum contacts with Florida under *Calder*'s "effects test," determining whether the burden on VLG outweighs the other considerations is unnecessary.

## CONCLUSION

VLG's motion to dismiss for lack of personal jurisdiction (Doc. 11) is **GRANTED**, and the complaint is **DISMISSED WITHOUT PREJUDICE**. The clerk must **CLOSE** the case.

ORDERED in Tampa, Florida, on February 22, 2019.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE